Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms the Opinion and Award of the Deputy Commissioner, with some modifications.
 * * * * * * * * * * *
As set forth in a Trial Order by Deputy Commissioner Ford filed 6 March 1998, the Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. A North Carolina Industrial Commission Form 21 Settlement (sic) Agreement approved 23 January 1997 appears in the Commission file.
2. On 19 May 1994, the parties were bound by and subject to the North Carolina Workers Compensation Act.
3. On 19 May 1994, the employer-employee relationship existed between the parties.
4. On 19 May 1994, Firemans Fund Ins. Co. provided workers compensation coverage to defendant-employer.
5. Plaintiff sustained an injury by accident arising out of and in the course of the employment with defendant-employer on 19 May 1994.
6. On 19 May 1994, plaintiff was earning an average weekly wage of $329.60 (which yields a compensation rate of $219.75).
7. The parties further stipulated to: 112 pages of medical records; plaintiff has been paid temporary total disability compensation benefits from 8 November 1994 through 11 December 1994; that plaintiff began working for defendant-employer 15 November 1993, and last performed work duties for said defendant-employer 25 or 26 June 1997; plaintiff has not reached maximum medical improvement at this time and that surgery is contemplated; plaintiff is claiming temporary total disability compensation benefits from 25 or 26 June 1997 to date; and the last evidentiary medical deposition is scheduled 10 March 1998.
At the hearing before the Deputy Commissioner on 4 February 1998, the parties introduced the following exhibits:
1. Plaintiffs Exhibit 1, marked P1, consisting of a letter dated 25 September 1997.
2. Plaintiffs Exhibit 2, marked P2, consisting of a letter dated 4 October 1997.
3. Defendants Exhibit 1, marked D1, consisting of a Form 19 dated 23 May 1994.
4. Defendants Exhibit 2, marked D2, consisting of an example of a garment sewn in plaintiffs work duties.
5. Defendants Exhibit 3, marked D3, consisting of examples of 3 pieces sewn on a garment.
6. Defendants Exhibit 4, marked D4, consisting of an example garment upon the neck of which the neck pieces are sewn.
7. Defendants Exhibit 5, marked DS, consisting of the supervisors investigation report of accident dated 20 May 1994.
8. Plaintiffs Exhibit 3, marked P3, consisting of a written warning dated 30 April 1997.
9. Plaintiffs Exhibit 4, marked P4, consisting of a work excuse dated 25 August 1997.
10. Plaintiffs Exhibit 5, marked P5, consisting of a work excuse dated 26 June 1997.
 * * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-one years of age with a tenth grade education. She had been employed by defendant-employer as a seamstress since 15 November 1993. On 19 May 1994, plaintiff turned or twisted around to her left side as she tossed a bundle of work material and felt pain in her back.
2. On 19 May 1994, plaintiff reported the incident to her supervisor, Claudine Blair. She did not report neck and shoulder pain. Ms. Blair did not complete the accident report until the next day. Plaintiff developed neck and shoulder pain during the evening of 20 May 1994. On 23 May 1994, plaintiff presented to J. Gillum Burke, M.D. Plaintiff complained of pain in her low back, right shoulder, and right neck. Dr. Burke diagnosed cervical and lumbar strains and right shoulder strain. He permitted plaintiff to return to light duty work.
3. Plaintiff continued to see Dr. Burke with complaints of pain in her lower back, neck, and right shoulder, and she remained on light duty. In June 1994, plaintiff began seeing a chiropractor and after two visits she noted significant improvement, but the improvement was short-lived. Her complaints of pain continued upon return to work. Continued complaints are noted in Dr. Burkes records of 20 June 1994, improvement is noted on 27 July 1994, worsening is noted on 7 July 1994, and improvement is again noted on 28 July 1994. These records are consistent with plaintiffs testimony that her shoulder pain never resolved completely, and that she would have good days and bad days.
4. Plaintiff presented for follow-up examinations with Dr. Burke for chronic low back pain in September, October, and November 1994. In November 1994, she had developed a left leg radiculopathy. A CT scan revealed a left parasagittal bulge at L4-L5, which Dr. Burke believed might be the cause of plaintiffs radiculopathy. On 8 November 1994, Dr. Burke took plaintiff out of work pending neurological evaluation of her condition.
5. Plaintiff presented to William Bell, M.D., with Carolina Neurosurgical Associates, on 17 November 1994 for back and left leg pain. Dr. Bell noted that plaintiffs prior neck pain had resolved, but he noted that the CT showed a questionable bulge at L5-S1 and ordered an MRI scan.
6. Dr. Bell reviewed plaintiffs MRI and found it "entirely normal. He recommended a back brace and rest; accordingly, he took plaintiff out of work until 12 December 1994.
7. Plaintiff continued to see Dr. Burke, who allowed plaintiff to return to work on 12 December 1994 with limited repeated back bending and stooping, and a lifting restriction of 10 pounds. Plaintiff began working a four-hour day, which was to be gradually increased to eight hours.
8. On 16 December 1994, plaintiff presented to Timothy McGowen, M.D., of Salem Orthopaedic and Sports Medicine, P.A., for a second neurosurgical opinion. Dr. McGowens examination revealed some tenderness in the lumbosacral junction, but no neck or shoulder problems. Dr. McGowen recommended a home exercise program and found that plaintiff had reached maximum medical improvement.
9. On 21 December 1994, Dr. Burke noted that plaintiff was still working four hours per day, and he recommended a schedule increasing her hours in three weeks to eight hours per day, with six hours of regular work and two hours of light duty.
10. By 14 March 1995, plaintiff was back to full-time regular work, but was still experiencing some tenderness in her lower back. Dr. Burke maintained his diagnosis of chronic lumbar strain and "intermittent cervical strain with right shoulder pain.
11. On 10 May 1995, Dr. Burke recommended alternative employment, noting that plaintiffs problems with her neck, back, and right shoulder had continued for most of the time she had worked for defendant-employer. Plaintiff continued to work full-time through June and July 1995 and controlled her pain with medication.
12. In September 1995, plaintiff presented to Dr. Burke with increasing right shoulder pain. She received medication, but returned in October 1995 with little change in her condition. Plaintiff stated that the flare-up may have been because her current job required continuous reaching with her right arm. She was treated with medication and returned to work without restrictions.
13. On 26 October 1995, Dr. Burke stated that plaintiff had reached maximum medical improvement. In December 1995, he released her from further treatment.
14. On 13 November 1995, plaintiff presented to M. Scott Spillman, M.D., for an independent medical examination. Plaintiff complained of continuing back and shoulder pain. Dr. Spillman believed that either plaintiffs work station or work method were the cause of her problems. He continued her on full duty and recommended physical therapy.
15. Plaintiff continued to receive treatment from Dr. Spillman regularly through March 1996, during which time Dr. Spillman continued plaintiff on medication and monitored her physical therapy progress. On 11 March 1996, Dr. Spillman found plaintiff to be at maximum medical improvement, with no work restrictions. She had full range of motion and her back was "doing fairly well. Dr. Spillman cautioned plaintiff regarding her diet, which he believed precipitated or perpetuated the trigger points and their associated symptoms. Dr. Spillman gave plaintiff a 2% permanent partial disability rating, and discharged her from further treatment.
16. Plaintiff did not seek medical treatment again until 20 December 1996 when she presented to Steven Hughes, M.D., of Wake Forest University Physicians, with a complaint of low back pain. Dr. Hughes diagnosed a lumbar strain which would take a few weeks to heal.
17. On 10 January 1997, plaintiff presented to Richard Rauck, M.D., with the Pain Control Center at Baptist Hospital. Dr. Rauck diagnosed plaintiff with myofascial shoulder pain, and he recommended physical therapy and medication. Dr. Rauck continued treatment through May 1997, at which time he recommended tests to rule out a rotator cuff tear, nerve entrapment, or thoracic outlet syndrome.
18. David F. Martin, M.D., performed the testing recommended by Dr. Rauck. He diagnosed a mild impingement of the right rotator cuff, or right rotator cuff tendonitis, accompanied by some degenerative disease, or osteoarthritis, of the acromioclavicular joint. He recommended surgery, which plaintiff desired but which defendants would not approve. Surgery had not been performed as of the date of the hearing before the deputy commissioner. Dr. Martin related the shoulder condition to the injury at work on 19 May 1994.
19. On 21 October 1997, plaintiff presented to Dr. Lee Whitehurst for an independent medical evaluation. Dr. Whitehurst diagnosed plaintiff with degenerative disc disease in her lumbar spine, cervical strain, and right shoulder girdle symptoms. After examining plaintiff and reviewing her medical records, he could not find any objective signs upon which to find a causal relationship between plaintiffs current shoulder complaints with the work injury on 19 May 1994. Dr. Whitehurst disagreed with Dr. Martins recommendation for surgery.
20. The deputy commissioner presided over an evidentiary hearing on 4 February 1998 to determine whether plaintiffs shoulder complaints were caused by the incident at work on 19 May 1994. At the outset of the hearing, defendants stipulated that plaintiff sustained an injury by accident on 19 May 1994 and did not limit that stipulation to lower back complaints. Defendants stipulated that the issues to be determined were (1) whether the injuries of which plaintiff complained were caused by the accident occurring on 19 May 1994, and (2) if so, to what compensation, if any, was plaintiff entitled under the Act. These stipulations were set forth in the deputy commissioners Trial Order. The hearing was conducted on these issues of causation and damages, and defendants waived any defense that the incident allegedly causing the shoulder condition was not an injury by accident under the law. Furthermore, defendants waived any defense that plaintiff failed to give timely notice of her shoulder injury as required by G.S. 97-22.
21. Plaintiffs shoulder condition was caused by the injury by accident on 19 March 1994 and was aggravated by her continued work duties.
22. The surgery recommended by Dr. Martin is reasonably necessary to effect a cure, give relief, or lessen plaintiffs disability.
23. As of 26 June 1997, plaintiff had not reached maximum medical improvement and was unable to return to her position with defendant-employer. In addition, on 23 October 1997, Dr. Martin took plaintiff out of work until she had the recommended surgery. On 22 September 1997, Dr. Rauck had taken plaintiff out of work until she could be examined by Dr. Martin.
24. Plaintiff received disability leave benefits from 26 June 1997 until 15 December 1997. She was terminated on 15 December 1997. At the time of her termination and as of the date of the hearing before the deputy commissioner, plaintiff had not reached maximum medical improvement and remained out of work pending the surgery.
 * * * * * * * * * * *
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 19 May 1994, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, injuring her low back and right shoulder. G.S. 97-2.
2. Plaintiff is entitled to total disability compensation from 26 June 1997 and continuing until further order of the Commission. G.S. 97-29.
3. Plaintiff is entitled to all reasonably required medical treatment for her right shoulder injury, including the surgery recommended by Dr. Martin. G.S. 97-25.
4. Defendants are entitled to a credit for leave disability benefits paid to plaintiff after 26 June 1997. G.S. 97-42.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendants shall pay plaintiff total disability compensation at the rate of $219.75 per week from 26 June 1997 and continuing until further order of the Commission. The accrued amount shall be paid in a lump sum, subject to a credit for leave disability benefits paid by defendants, and subject to the attorneys fee approved in paragraph 3 of this Award.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her shoulder injury on 19 May 1994, including the surgery recommended by Dr. Martin.
3. A reasonable attorneys fee of 25 percent of the compensation due plaintiff is approved for plaintiffs attorney and shall be paid as follows: 25 percent of the accrued amount due plaintiff shall be deducted and paid directly to plaintiffs attorney. Thereafter, plaintiffs attorney shall receive every fourth check.
4. Defendants shall pay the costs.
 S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ____________________ DIANNE C. SELLERS COMMISSIONER